# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| TOBY DIONNE PEGRAM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:18cv828 |
| | ) | |
| C. WILLIAMSON, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This case comes before the undersigned United States Magistrate Judge for a recommendation on Defendant Boggs's Motion "To Dismiss Plaintiff's Complaint With Prejudice" (Docket Entry 18) (the "Motion to Dismiss"). Plaintiff filed no response to the Motion. (See Docket Entries dated May 16, 2019, to present.)[1] For

---

[1] By local rule, "[i]f a respondent fails to file a response within the time required . . ., the motion will be considered and decided as an uncontested motion, and ordinarily will be granted without further notice." M.D.N.C. LR 7.3(k). Further, "[w]hen a defendant's motion to dismiss a complaint states specific deficiencies that warrant dismissal, and presents supporting legal arguments, it is the plaintiff's obligation to respond substantively to address them. Failure to respond to the defendant's arguments constitutes abandonment of those claims. Any abandoned claims are subject to dismissal with prejudice." Kitchings v. Shelton, Civ. No. 17-882, 2018 WL 398285, at *6 (D. Md. Jan. 12, 2018) (unpublished) (internal citations omitted). However, the United States Court of Appeals for the Fourth Circuit requires substantive review of even unopposed motions to dismiss. See Stevenson v. City of Seat Pleasant, Md., 743 F.3d 411, 416 n.3 (4th Cir. 2014) ("Even though [the plaintiffs] did not challenge the motions to dismiss, we note that the district court nevertheless has an obligation to review the motions to ensure that dismissal is proper.").

the reasons that follow, the Court should grant the Motion to Dismiss.

BACKGROUND

This case began when Plaintiff, a pretrial detainee, filed a pro se Complaint alleging deprivations of his constitutional rights under 42 U.S.C. § 1983 in connection with the conditions of his confinement at the Guilford County Detention Center. (See Docket Entry 2 at 7-16.)[2] The Complaint names seven Defendants, all law enforcement and corrections officers (see id. at 3-4), to include Defendant Boggs, a "F[ir]st Lieutenant" at the Guilford County Sheriff Detention "Bureau" (id. at 4).[3] It further alleges that, on August 28, 2017, "while [Plaintiff was] housed at the High Point, Guilford County Jail" (id. at 9), a verbal and physical altercation transpired between Plaintiff and multiple officers, including some Defendants (see id. at 9-11).

According to the Complaint, officers thereafter transported Plaintiff to the Greensboro location of the Guilford County Detention Center and placed him in punitive isolation. (Id. at 11.) The Complaint also asserts that Plaintiff "received both a[] notice of [disciplinary] charges and a hearing" (id.), as well as a post-hearing notice of the dismissal of the disciplinary matters

---

[2] Citations to Docket Entry pages utilize the CM/ECF footer's pagination.

[3] In quoting Plaintiff's filings, this Recommendation applies standard capitalization conventions for ease of reading.

(see id.). However, the Complaint alleges that the notice indicated that the dismissal did not "negate the fact [that Plaintiff] assault[ed an officer] and [therefore would] remain in punitive isolation regardless of being cleared of the charges." (Id.) Consequently, the Complaint maintains, "Plaintiff is permanently assigned to punitive isolation . . . forced to wear leg restraints, waist chain, [] handcuff[s], [and to be] escorted by [two] officers [at all times] when [Plaintiff is] out [of his] cell." (Id. at 12.) The Complaint states that Plaintiff thereafter began to make requests for grievance forms, which were "denied [three or four] times [until] finally [another Defendant] granted [permission to file] a grievance" (id.), which Plaintiff then filed "against the impl[e]mentation of a policy without due process" (id.). The Complaint asserts that other Defendants denied the Grievance and Plaintiff's subsequent appeal. (See id. at 12-13.)

In addition, the Complaint alleges that Plaintiff requires a "religious kosher diet," and that, after he "continued to file request forms for due process, [ his] food started coming cold or half cooked." (Id. at 13; see also id. (stating that Plaintiff continued to receive such food until he "stopped requesting for due process").) According to the Complaint, "along with the constitutional deprivation, [unspecified officials instituted a] policy to decrease [] Plaintiff's rec[reation] hours from 7 to 3

hours per week, [] mishandl[ed Plaintiff's] food for months, [and labeled Plaintiff an] escape risk." (Id.)  The Complaint, however, does not contain any factual matter implicating Defendant Boggs in any of those events.  (See id. at 9-13.)

As concerns the Motion to Dismiss, the Complaint alleges that Defendant Boggs "is totally aware of [the] constitutional deprivation and [that he] told [] Plaintiff . . . [that] the actions violate policy and due process[,] but [that] there [was] no remedy, [higher ranking Defendants were] not going to remedy the wrong[, and that] it [was] going to continue[.]  Defendant Boggs advised [Plaintiff] to speak with a[n] attorney."  (Id. at 14.) Additionally, the Complaint states that "Defendant Boggs sta[r]ted intercepting [and redirecting] request forms to [those higher ranking Defendants]" (id.; accord id. at 8), and that he acted in this manner "to hinder exhuastion of the jail's grievance system" (id. at 8).  Lastly, the Complaint alleges that Defendant Boggs "us[ed] the jail[']s suicide policy to intimidate []Plaintiff to stop his pursuit for due process" (id.), specifically, when Plaintiff "attempted a peaceful hung[e]r protest for his due process rights" (id. at 14; see also id. (alleging that "Plaintiff's clothes and property [were] tak[en] away")). Based on those allegations, the Complaint asserts claims against Defendant Boggs in his individual and official capacities (see id. at 4) and

-4-

requests declaratory relief and punitive damages from him (see id. at 17).

Defendant Boggs filed the Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), because (i) "Plaintiff failed to exhaust his administrative remedies" (Docket Entry 18 at 1), (ii) Plaintiff's claims fail as a matter of law due to their "conclusory [] nature, fail[ure] to state a legally cognizable cause of action, and fail[ure] to allege proximate causation of injury" (id. at 2), (iii) Plaintiff "failed to allege that Defendant[ Boggs] acted with deliberate indifference" (id.), and (iv) Defendant Boggs remains "entitled to qualified immunity" (id.). Following the filing of the Motion to Dismiss, the Clerk sent Plaintiff a letter advising him of his "right to file a 20-page response in opposition . . . within 21 days from the date of service of the [M]otion [to Dismiss] upon [him]." (Docket Entry 23 at 1.) The letter specifically cautioned Plaintiff that a "failure to respond . . . within the allowed time may cause the [C]ourt to conclude that [Defendant Boggs's] contentions are undisputed and/or that [Plaintiff] no longer wish[es] to pursue the matter," as well as that, "unless [Plaintiff] file[s] a response in opposition to the [M]otion [to Dismiss], it is likely [his] case will be dismissed." (Id.) Despite these warnings, Plaintiff did not respond. (See Docket Entries dated May 16, 2019, to present.)

DISCUSSION

**I. Motion to Dismiss Standards**

A Rule 12(b)(6) motion "tests the sufficiency of a complaint," but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). Accordingly, in reviewing a motion to dismiss, the Court must "accept the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff." Coleman v. Maryland Ct. of App., 626 F.3d 187, 189 (4th Cir. 2010), aff'd sub nom., Coleman v. Court of App. of Md., 566 U.S. 30 (2012). The Court must also "draw all reasonable inferences in favor of the plaintiff." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 440 (4th Cir. 2011) (internal quotation marks omitted). Moreover, a pro se complaint must "be liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks omitted); but see Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (explaining that the Fourth Circuit has "not read *Erickson* to undermine [the] requirement that a pleading contain more than labels and conclusions" (internal quotation marks omitted)).

To avoid Rule 12(b)(6) dismissal, a complaint must contain sufficient factual allegations "to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678

(2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). To qualify as plausible, a claim needs sufficient factual content to support a reasonable inference of the defendant's liability for the alleged misconduct. Id. (citing Twombly, 550 U.S. at 556). The complaint need not contain detailed factual recitations, but must provide "the defendant fair notice of what the claim is and the grounds upon which it rests." Twombly, 550 U.S. at 555 (internal quotation marks and ellipsis omitted). "At bottom, determining whether a complaint states . . . a plausible claim for relief . . . will 'be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Iqbal, 556 U.S. at 679).

**II. Official Capacity Claim**

With respect to local government officials, official capacity liability attaches under Section 1983 only if "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Collins v. City of Harker Heights, Tex., 503 U.S. 115, 121 (1992) (internal quotation marks omitted). Notably, an official's discretionary acts, exercised in carrying out official duties, do not necessarily represent official policy. See Gantt v. Whitaker, 203 F. Supp. 2d 503, 509 (M.D.N.C. 2002). "Rather, the official must have 'final authority' over government

policy with respect to the action in question" to trigger official capacity liability. Id. (quoting Pembaur v. Cincinnati, 475 U.S. 469, 481-82 (1986)).

Here, the Complaint alleges that Plaintiff suffered injury from Defendant Boggs's actions and baldly asserts that Defendant Boggs acted pursuant to "county policy, procedures[,] rule[s] and regulations" of the Guilford County Detention Center. (See Docket Entry 2 at 8.) Such conclusory allegations do not suffice, particularly given the lack of any allegation that Defendant Boggs possesses "final authority" over any such policy that contributed to Plaintiff's alleged injury. (See id. at 1-27.) The in forma pauperis statute provides that "the [C]ourt shall dismiss the case at any time if the [C]ourt determines . . . the action . . . fails to state a claim upon which relief may be granted[.]" 28 U.S.C. § 1915(e)(2)(B)(ii). Plaintiff has not stated a claim against Defendant Boggs in his official capacity, and the Court should thus dismiss with prejudice that aspect of Plaintiff's claim.

### III. Individual Capacity Claim

#### A. Failure to Exhaust Administrative Remedies

Turning to the individual capacity claim, Defendant Boggs contends that Plaintiff failed to exhaust his administrative remedies under the Prison Litigation Reform Act (the "PLRA") "with respect to these claims against [him]." (Docket Entry 19 at 5.) "Under the PLRA, a prisoner bringing an action 'with respect to

-8-

prison conditions' under [Section] 1983 must first exhaust all available administrative remedies." Moore v. Scotland Cty. Jail, No. 1:05CV527, 2006 WL 2168940, at *1 (M.D.N.C. June 28, 2006) (unpublished) (quoting 42 U.S.C. § 1997e). "It is well-settled by now that Section 1997e's exhaustion requirement is mandatory." Murray v. Dobyns, No. 1:12CV214, 2013 WL 3326661, at *2 (M.D.N.C. July 1, 2013) (unpublished) (citing Jones v. Bock, 549 U.S. 199, 211 (2007)).

In support of the Motion to Dismiss, Defendant Boggs included a description of Guilford County Detention Center's Inmate Request Procedure and Grievance Policy, as well as information regarding Plaintiff's utilization of the procedures. (See Docket Entry 19 at 5-8). As to such matters, Defendant Boggs refers to affidavits from Guilford County Sheriff's Office personnel (the "Captain Doub Affidavit" and the "Officer Diehl Affidavit"). (See id.; see also Docket Entry 20, ¶ 1; Docket Entry 21, ¶ 1.) According to the Captain Doub Affidavit:

> The Greensboro Jail utilizes an Inmate Request Procedure to handle routine requests by inmates. Inmate Request Forms ('IRFs') are available to inmates, upon request, from floor officers assigned to supervise the inmate's housing unit or other officers responsible for inmate housing and classification. IRFs are used by inmates to ask for routine, general information or jail services, such as information about court dates, or to request access to the jail law library, religious materials, or indigent inmate provision kits.
> 
> The Greensboro Jail also employs an Inmate Grievance Policy, which is separate and apart from the Inmate Request Procedure. Generally, an informal resolution may

> resolve a complaint without a formal grievance being filed. The informal resolution process is initiated by the inmate. When there is an indication of a complaint, the officer or employee shall attempt a remedy for the inmate. If the officer or employee is unable to provide a satisfactory remedy for the complaint, the officer or employee shall issue an [IRF] to the inmate. If the inmate has satisfied the above requirements and is unsatisfied with the resolution of that request or complaint, then the inmate can request a grievance form. To do so, the inmate must submit an [IRF] requesting a Grievance Form, stating the matter to be grieved, and detailing how the inmate has complied with the forgoing requirements.
>
> If proper, the inmate will then be issued a Grievance Form by the Shift Commander or Classification/Grievance Officer. . . .

(Docket Entry 19 at 6-7 (internal citations omitted) (quoting Docket Entry 20, ¶¶ 3-5 (numbers in original omitted)).)

The Officer Diehl Affidavit, in turn, states that Officer Diehl "personally searched through the Jail's archive of [IRFs] and Grievance Forms . . . [which] would include copies of any Inmate Grievance Forms submitted to the Greensboro Jail Staff by [] Plaintiff." (Docket Entry 19 at 7 (quoting Docket Entry 21, ¶¶ 3-4).) The results from Officer Diehl's search revealed that

> Plaintiff [] filed only one [G]rievance during his incarceration . . . on October 9, 2017. It addresses the administrative segregation and the two-officer restriction during recreation time imposed on Plaintiff following the use of force incident involving [another Defendant] on August 28, 2017. The Grievance was denied on October 27, 2017[.] Plaintiff appealed this denial and the denial was upheld on November 8, 2017. The [G]rievance in no way mentions Defendant Boggs or addresses any action or decision of Defendant Boggs.

(Docket Entry 19 at 7-8 (internal citations omitted) (quoting Docket Entry 21, ¶ 5 (number in original omitted)).) The referenced Grievance and relevant appeal material (which Defendant Boggs supplied) confirm Defendant Boggs's assertions regarding the basis of the Grievance. (See Docket Entry 21-2 at 1-11.)

The Complaint similarly states that Plaintiff filed one Grievance "concerning the facts relating to this [C]omplaint" on "Oct[ober] 10, 2017," which addressed "[i]mpermissible [p]unishment[, a]ssault[, and] 8th and 14th Amendment violations." (Docket Entry 2 at 20.) The Complaint neither alleges that this Grievance pertained to Defendant Boggs, nor references any other grievance, much less a grievance (or an attempt to file a grievance) against Defendant Boggs. (See id.; see also id. at 1-27.) Under these circumstances, it appears that Plaintiff failed to exhaust his administrative remedies as to any claim against Defendant Boggs.

Moreover, the Clerk's letter to Plaintiff expressly warned him that Defendant Boggs may have submitted evidence in support of the Motion to Dismiss, as well as that Plaintiff's "failure to respond, or, if appropriate, to file affidavits or evidence in rebuttal within the allowed time may cause the [C]ourt to conclude that [D]efendant[ Boggs's] contentions are undisputed . . . ." (Docket Entry 23 at 1.) Plaintiff thus received "a reasonable opportunity to present all the material that is pertinent to [this issue],"

-11-

Fed. R. Civ. P. 12(d). See generally Turner v. Clelland, No. 15CV947, 2016 WL 6997500, at *3 (M.D.N.C. Nov. 30, 2016) (unpublished) (discussing consideration of material outside pleadings at dismissal stage in PLRA exhaustion context), recommendation adopted, 2017 WL 913630 (M.D.N.C. Mar. 7, 2017) (unpublished)).

Ultimately, however, the Court need not resolve whether it should dismiss the claims against Defendant Boggs at this stage of the proceedings based on Plaintiff's failure to exhaust administrative remedies, because (for reasons shown in the discussion that follows) the Complaint fails to state a claim against Defendant Boggs.

### B. Failure to State a Claim

Next, Defendant Boggs seeks dismissal of the claims against him as conclusory and, more specifically, asserts that "Plaintiff merely reiterates a sequence of events, linked with his beliefs[,] and arrives at a conclusion that [Defendant] Boggs is responsible for violations of his constitutional rights, but offers no plausible explanation as [to] how [Defendant Boggs's] alleged act[s] . . . caused any harm." (Docket Entry 19 at 8.) The Complaint does not state a plausible claim against Defendant Boggs and therefore the Court should dismiss the claims against him under Federal Rule of Civil Procedure 12(b)(6).

### i. Access to Grievance Process

The Complaint alleges that Defendant Boggs told Plaintiff that "[other Defendants'] actions violate policy and due process[,] but [that] there [was] no remedy, [that higher ranking Defendants were] not going to remedy the wrong[, and that] it [was] going to continue[.] Defendant Boggs advised [Plaintiff] to speak with a[n] attorney." (Docket Entry 2 at 14.) The Complaint further alleges that Defendant Boggs "sta[r]ted intercepting [and redirecting] request forms to Major Rollins and Captain Dodson" (id.; accord id. at 8), to "hinder exhaustion of the jail[']s grievance system" (id. at 8).[4]

The Fourth Circuit has held that "inmates do not have a constitutionally protected right to a grievance procedure, and no liability exists under [Section] 1983 for a prison administrator's response to a grievance or appeal." Brown v. Virginia Beach Sheriff's Office, No. 1:17cv48, 2017 WL 6402987, at *3 (E.D. Va. Mar. 28, 2017) (unpublished) (citing Adams v. Rice, 40 F.2d 72, 75 (4th Cir. 1994)), aff'd in relevant part, 697 F. App'x 161, 162 (4th Cir. 2017) ("[The plaintiff] contended that [the defendant]

---

[4] Along with the previously-discussed Grievance, Defendant Boggs provided Plaintiff's IRFs submitted during his incarceration at the Guilford County Detention Center. (See Docket Entry 21-1 at 1-109.) Upon review of those forms, it appears that, although Plaintiff submitted in excess of 100 IRFs, Defendant Boggs handled only 13. (See id. at 62, 69-73, 75, 88-91, 94-95.) These circumstances do not support the conclusory allegation that Defendant Boggs hindered Plaintiff's access to the grievance process. The Court, however, need not consider that material in resolving the Motion to Dismiss.

-13-

refused to accept a grievance . . . . [T]his claim concerns access to grievance procedures which . . . is not constitutionally protected."). As a result, Plaintiff's instant claim fails as a matter of law.

### ii. Suicide Protocol Placement

Additionally, the Complaint alleges in a conclusory manner that Defendant Boggs "us[ed] the jail[']s suicide policy to intimidate Plaintiff to stop his pursuit for due process" (Docket Entry 2 at 8), or, more specifically, retaliated against Plaintiff by placing him on "suicide protocol" (id. at 14), in response to Plaintiff's "peaceful hung[e]r protest for his due process rights" (id.). According to the Complaint, Defendant Boggs thereby caused "Plaintiff's clothes and property [to] be tak[en] away." (Id.)

The Fourth Circuit has previously held that "an inmate possesses the right to be free from retaliation for filing grievances." Brown, 697 F. App'x at 162. "To state a First Amendment retaliation claim, a plaintiff must show: '(1) his speech was protected, (2) the alleged retaliatory action adversely affected his protected speech, and (3) a causal relationship between the protected speech and the retaliation.'" Id. (quoting Raub v. Campbell, 785 F.3d 876, 885 (4th Cir. 2015)). "[A] plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." Id.

-14-

(quoting Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 500 (4th Cir. 2005)).

Defendant Boggs has argued that "the suicide watch protocol . . . was a logical response to Plaintiff's efforts to starve himself." (Docket Entry 19 at 8; see also Docket Entry 21-1 at 75 (setting forth explanation from another Defendant, in response to IRF from Plaintiff) that: "[T]he 'hunger strike' protocol is a medical protocol that is used when inmates are refusing to eat. This protocol is not designed as a punitive measure, but only to protect the safety and well-being of the inmate.").) Consistent with that argument, other courts have held that "[p]rison officials have the right and the duty to take measures reasonably necessary . . . to safeguard inmates committed to their custody and care. This necessarily includes the right and duty to take reasonable measures to insure the physical and mental health of inmates engaged in hunger strikes." Brown v. Graham, 2010 WL 6428251, at *10 (N.D.N.Y. Mar. 30, 2010) (unpublished) (citing Grand Jury Subpoena John Doe v. United States, 150 F.3d 170, 172 (2d Cir. 1998)).

Given such authority, the Complaint's conclusory allegation that Defendant Boggs placed Plaintiff on suicide watch during his hunger strike in retaliation for pursuing a grievance (or other protected activity), at most, "pleads facts that are merely consistent with a defendant's liability, [and thus] stops short of

the line between possibility and plausibility of entitlement to relief," Iqbal, 556 U.S. at 678 (internal quotation marks omitted).

### C. Qualified Immunity

Finally, Defendant Boggs argues for dismissal of the Complaint's Section 1983 individual capacity claim(s) against him pursuant to the doctrine of qualified immunity. (See Docket Entry 18 at 2; see also Docket Entry 19 at 10-11.) "Qualified immunity protects officers who commit constitutional violations, but who, in light of clearly established law, could reasonably believe [their] actions were lawful." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011). Absent a constitutional violation, the qualified immunity analysis "ends right then and there." Abney v. Coe, 493 F.3d 412, 415 (4th Cir. 2007).

For reasons discussed above, the Complaint does not plausibly establish that Defendant Boggs unlawfully deprived Plaintiff of his constitutional rights and thus the qualified immunity doctrine also requires dismissal in this case.

### CONCLUSION

Although it appears undisputed that Plaintiff failed to exhaust his administrative remedies pertaining to his claims against Defendant Boggs, the Court need not delve into the procedural questions raised by consideration of such matters at this stage of the proceedings, because Plaintiff has failed to state any claim against Defendant Boggs.

**IT IS THEREFORE RECOMMENDED** that Defendant Boggs's Motion to Dismiss (Docket Entry 18) be granted and that the claims against him be dismissed under Federal Rule of Civil Procedure 12(b)(6).

                                        /s/ L. Patrick Auld
                                              **L. Patrick Auld**
                               **United States Magistrate Judge**

February 5, 2020